UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EDDIE LAREECE PITTMAN,

        Plaintiff,

vs.                                  Case No. 3:03-cv-1042-J-25MMH

CAPTAIN TERRY SVIR, etc.;
et al.,

        Defendants.

_____

## ORDER

### I. Status

On December 9, 2003, Plaintiff Eddie LaReece Pittman, proceeding *pro se*, initiated this action by filing a civil rights complaint (Doc. #1) pursuant to 42 U.S.C. § 1983. Plaintiff Pittman paid the $150.00 filing fee in this case. On May 26, 2004, Plaintiff filed an Amended Complaint (Doc. #14), which was stricken by the Court. See Court's Order (Doc. #16), filed June 4, 2004. On July 1, 2004, Plaintiff filed a Second Amended Complaint, in which he names the following individuals as the Defendants in this case: (1) Captain Terry Svir; (2) Officer Ginger Parker; (3) Sergeant Douglas Barnett; (4) Officer Melvin Eberle; (5) Lieutenant Archie Clemons; (6) Sergeant Kevin Graham; (7) Officer Leonard

Meyers; (8) Assistant Warden Mikeal Eberhard; (9) Sergeant Bobby Davis; (10) Sergeant Joseph A. Roberson; (11) Officer Bradford W. Brady; (12) Sergeant Johnny Jerry; (13) Vaughn Foust; (14) Major George Moultrie; (15) Dr. Anil Arora; and, (16) Sergeant Eddie L. Allen. Plaintiff claims that the Defendants retaliated against him for his exercising his rights to access to the courts and his attorneys and for filing grievances.[1] As relief, he requests compensatory, nominal and punitive damages.

Before this Court are the following dispositive motions by Defendants: Defendants Svir, Barnett, Eberle, Graham, Myers, Brady, Eberhard and Jerry's Dispositive Motion for Summary Judgment (Doc. #73); Defendants Roberson, Davis, Clemons, Parker and Foust's Dispositive Motion for Summary Judgment (Doc. #74); and, Defendants Arora, Moultrie and Allen's Dispositive Motion for Summary Judgment (Doc. #75). In support of Defendants' motions for summary judgment, they filed affidavits. See Notice of Filing (Doc. #76), filed August 26, 2005, Exhibits 1-17, attached affidavits (hereinafter Defendants' Affidavits). Plaintiff has been instructed on how to respond to a motion for summary judgment and has been given sufficient time in which to respond. See Court's Orders (Docs. #7, #79). Plaintiff has properly responded. See

_____

[1] Plaintiff Pittman "wishes to inform the Court that he does not desire to p[u]rsue any 8th Amendment Claims for Deliberate Indifference or Cruel and Unusual Punishment in order to keep his complaint simple . . . ." Plaintiff's Motion to Be Heard (Doc. #55), filed January 18, 2005, at 1.

- 2 -

Plaintiff's Replies (Docs. #81, #82, #83), attached exhibits. Also, before this Court is Plaintiff's Dispositive Motion for Summary Judgment Against Defendant Foust (Doc. #85).  Defendant Foust has responded.  See Defendant Vaughn Foust's Response to Plaintiff's Dispositive Motion for Summary Judgment (Doc. #86).

## II. Summary Judgment Standard

With respect to the standard for granting summary judgment, the Eleventh Circuit Court of Appeals has stated:

> [S]ummary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In re Optical Technologies, Inc., 246 F.3d 1332, 1334 (11th Cir. 2001).

The parties' respective burdens and the Court's responsibilities are outlined as follows:

> The party seeking summary judgment bears the initial burden to demonstrate to the district court the basis for its motion for summary judgment and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show an absence of any genuine issue of material fact. Taylor v. Espy, 816 F.Supp. 1553, 1556 (N.D. Ga. 1993) (citation omitted). In assessing whether the movant has met this burden, the district court must review the evidence and all factual inferences drawn therefrom, in the light most favorable to the

- 3 -

non-moving party. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987). If the movant successfully discharges its burden, the burden then shifts to the non-movant to establish, by going beyond the pleadings, that there exist genuine issues of material fact. Matsushita Electric Industrial Co. v. Zenith Radio Corp.[,] 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Applicable substantive law will identify those facts that are material. Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. Id. For factual issues to be considered genuine, they must have a real basis in the record. Matsushita, 475 U.S. at 586-87, 106 S.Ct. at 1355-56. It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather determine whether such issues exist to be tried. Anderson, 477 U.S. at 249, 106 S.Ct. at 2135. The Court must avoid weighing conflicting evidence or making credibility determinations. Id. at 255, 106 S.Ct. at 2513-14. Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a general issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918-19 (11th Cir. 1993); see Mulhall v. Advance Sec. Inc., 19 F.3d 586, 589-90 (11th Cir.), cert. denied, 513 U.S. 919 (1994).

"It is true that on a motion for summary judgment, all reasonable inferences must be made in favor of the non-moving party." Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citation omitted). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Id. (citations omitted).

> If a reasonable jury could not find in favor of the nonmoving party, no genuine issue of material fact does exist; and summary judgment is proper. Beal v. Paramount Pictures Corp., 20 F.3d 454, 459 (11th Cir. 1994). A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). As Fed.R.Civ.P. 56(e) states, "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004). Thus, "[s]ummary judgment should be granted when, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

Finally, "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." Brown v. Crawford, 906 F.3d 667, 670 (11th Cir. 1990) (citations omitted), cert. denied, 500 U.S. 933 (1991).

## III. Plaintiff's Claims

Plaintiff Pittman sets forth the following retaliation claims against the Defendants. Specifically, Plaintiff contends that the Defendants retaliated against him by the following actions: Defendant Svir made a death threat to him after Plaintiff filed a grievance against Sergeant Hooten; Defendant Parker conducted retaliatory locker searches and illegally confiscated personal items before he reported to confinement; Defendant Barnett gave illegal advice and made unprofessional comments to Plaintiff; Defendant Eberle made "an insinuated death threat" (Second Amended Complaint at 12); Defendant Clemons threatened him and took credit for placing him into confinement; Defendant Graham threatened him with close management confinement; Defendant Myers used racial slurs towards Plaintiff; Defendant Eberhard changed Plaintiff's custody level from minimum to medium; Defendant Davis issued a false disciplinary report; Defendants Roberson and Brady led "an act of fabricated disturbances in order to justify entering the Plaintiff's cell to issue physical abuse" (id. at 8); Defendant

- 6 -

Jerry issued a threat of more confinement time; Defendant Foust harassed Plaintiff, made unprofessional and sarcastic remarks to Plaintiff and denied him photocopying services; and, Defendants Arora, Moultrie and Allen conspired to have Plaintiff's work release revoked and to have Plaintiff transferred back to prison.

### IV. Applicable Law

In any 42 U.S.C. § 1983 cause of action, the initial inquiry must focus on whether the two essential elements to a section 1983 action are present.

> A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992); Hale v. Tallapoosa County, 50 F.3d 1579 (11th Cir. 1995).

"The First Amendment protects inmates from retaliation by prison officials for filing lawsuits or administrative grievances." Redd v. Conway, No. 05-12337, 2005 WL 3528932, at *4 (11th Cir. Dec. 22, 2005) (per curiam) (not selected for publication in the Federal Reporter) (citing Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986) (per curiam); see also Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)). The Eleventh Circuit Court of Appeals has outlined the standard for stating a retaliation claim:

> The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech.

> Thomas v. Evans, 880 F.2d 1235, 1242 (11th
> Cir. 1989). "To state a [F]irst [A]mendment
> claim for retaliation, a prisoner need not
> allege violation of a separate and distinct
> constitutional right." Id. at 1242. Rather,
> "[t]he gist of a retaliation claim is that a
> prisoner is penalized for exercising the right
> of free speech."[2]   Id.   A prisoner can
> establish retaliation by demonstrating that
> the prison official's actions were "the result
> of his having filed a grievance concerning the
> conditions of his imprisonment."   Wildberger
> v. Bracknell, 869 F.2d 1467, 1468 (11th Cir.
> 1989).

Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); Bennett v.
Hendrix, 423 F.3d 1247, 1253 n.6 (11th Cir. 2005).   In Farrow, the
Eleventh Circuit concluded that summary judgment in defendants'
favor was proper on Farrow's retaliation claim because Farrow "has
not established a causal relationship between his complaints and
the alleged denial of treatment" by the defendant and her staff.
Farrow v. West, 320 F.3d at 1249 (citing Avirgan v. Hull, 932 F.2d
1572, 1577 (11th Cir. 1991) ("If the party seeking summary judgment
meets the initial burden of demonstrating the absence of a genuine
issue of material fact, the burden then shifts to the nonmoving
party to come forward with sufficient evidence to rebut this

_____

[2] "The penalty need not rise to the level of a separate
constitutional violation."   Thomas v. Evans, 880 F.2d 1235, 1242
(11th Cir. 1989), cert. denied, 510 U.S. 1026 (1993) (citing Wright
v. Newsome, 795 F.2d 964 (11th Cir. 1986) (per curiam) (concluding
that the prisoner stated a retaliation claim and a claim of denial
of access to the courts based on the confiscation of legal
materials); Hall v. Sutton, 755 F.2d 786 (11th Cir. 1985) (holding
that the prisoner stated a retaliation claim based on the
confiscation of various personal possessions)).

showing with affidavits or other relevant and admissible evidence.")).  Thus, Plaintiff must establish that he engaged in protected conduct (i.e., the filing of administrative grievances); that he suffered an adverse action by the defendant prison officials; and, that there is "a causal relationship" between the two.  See id. at 1248-49; Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989) (stating that a prisoner can establish retaliation by demonstrating that the prison official's adverse actions were "the result of his having filed a grievance concerning the conditions of his imprisonment . . . .").

"[S]ummary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial."  Crawford-El v. Britton, 523 U.S. 574, 600 (1998).  Therefore, at the summary judgment stage, "if the defendant-official has made a properly supported motion, the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive."  Id. (citation and footnote omitted).

## V. Conclusions

Plaintiff Pittman, in the Second Amended Complaint, sets forth the Defendants' various actions that he claims were retaliatory measures that resulted from his filing of grievances, his corresponding with attorneys, the courts and the institutional

- 9 -

Inspector General and his utilizing the institution's legal resources and services.

Plaintiff Pittman was an inmate within the Florida Department of Corrections from June 12, 2000, until June 9, 2003, and was assigned to North Florida Reception Center, Columbia Correctional Institution, Lake City Work Release Center, South Florida Reception Center and Everglades Correctional Institution. Plaintiff's Reply (Doc. #81) at 1-2; see http://www.dc.state.fl.us/InmateReleases (website for the Florida Department of Corrections, Inmate Releases Information). On June 9, 2003, Plaintiff Pittman was released from the Florida Department of Corrections; he is no longer incarcerated and resides in the state of North Carolina. See http://www.dc.state.fl.us/InmateReleases.

First, Plaintiff alleges that Sergeant Hooten, on April 23, 2001, woke Plaintiff because he had been snoring and then used profanity towards Plaintiff. Plaintiff then filed a grievance against Sergeant Hooten for unprofessional conduct and the unwarranted use of abusive language towards an inmate. Plaintiff claims that, on June 15, 2001 (after Plaintiff filed the grievance against Sergeant Hooten), Defendant Svir retaliated against Plaintiff by issuing a "death threat" to him. According to Plaintiff, the grievance against Sergeant Hooten had initially been submitted as a formal grievance, but was returned to Plaintiff, instructing him to resubmit the complaint as an informal grievance

- 10 -

to Defendant Captain Svir (Hooten's supervisor). Plaintiff did as
he was instructed. Plaintiff claims that Defendant Svir confronted
him about the grievance that Plaintiff had resubmitted against
Sergeant Hooten.

In response to Plaintiff's allegations, Defendant Svir has
stated, in pertinent part:

> I have been employed by the Florida Department
> of Corrections for over 22 years.   For the
> past 9 years[,] I have been a captain at [the]
> Reception and Medical Center ("RMC"), formerly
> known  as   North  Florida  Reception  Center
> ("NFRC").
>
> On June, 2001, I worked on a 12:00 AM to
> 8:00 AM shift at the west unit.  None of the
> other named Defendants in this law suit worked
> with me on that shift.
>
> At that time, answering grievances was a
> routine part of my duty.  I have responded to
> thousands of grievances in my career.
>
> When  answering  inmate  grievances  at
> RMC[,] my standard operating procedure was to
> sit in my office and write out a response
> based upon the inmate's allegations contained
> in the written grievance paper which had been
> submitted.   If necessary, on occasion[,] I
> would call the corrections officer involved to
> obtain information. I never deviated from the
> procedure and never called an inmate in my
> office to discuss a grievance with him.
>
> I   categorically   deny   all   of   the
> allegations against me made by Plaintiff,
> Eddie Pittman.  I never met with him.  I never
> talked to him.   I would not know Mr. Pittman
> if he was standing in front of me.
>
> I  did  not  retaliate  in  any  fashion
> against Mr. Pittman for his filing of a
> grievance.

> Any dealings I may have had with
> Plaintiff, Eddie Pittman, arose out of the
> course of my employment with the Florida
> Department of Corrections.
>
> I did not intentionally violate any of
> Plaintiff's civil rights, First Amendment or
> otherwise.

Defendant Svir's Affidavit.

As reflected by his Affidavit, Defendant Svir concludes that
he never met with Plaintiff, never talked to Plaintiff and never
retaliated against Plaintiff. However, it is clear that answering
grievances was a routine part of Defendant Svir's job at that time,
and it would not have been inappropriate for Defendant Svir, as the
supervisor, to interview Plaintiff Pittman concerning the grievance
that had been submitted to him concerning Sergeant Hooten.
Therefore, even assuming that Defendant Svir met with Plaintiff to
discuss the grievance and then made the statements to Plaintiff,
the statement that "something drastic may happen to you" should be
evaluated within the context in which it was apparently made.
Plaintiff, in his Second Amended Complaint, also alleges that
Defendant Svir stated, "Those convicts do not care anything about
you. They'd hurt you for keeping them awake with your snoring."
Plaintiff concedes that Defendant Svir was inquiring about the
incident, and the record clearly reflects that Svir's responding to
grievances as well as supervising other officials within his unit

were his duties as a captain.[3]  Defendant Svir's alleged statements
were not threats to Plaintiff's life.  Thus, even based on
Plaintiff's version of the conversation, Defendant Svir was merely
attempting to inform Plaintiff that Plaintiff's loud snoring was
disturbing to the other inmates.  Plaintiff, here, has not shown
adverse action taken against him in retaliation for the filing of
the grievance against Sergeant Hooten.  It is noteworthy that
Plaintiff, the very next day (June 16, 2001), filed another
grievance and thereafter filed a multitude of grievances.  See
Plaintiff's Complaint (Doc. #1), attached exhibits.  The record
certainly reflects that any alleged actions by Defendants did not
thereafter have a chilling effect on Plaintiff's submissions of
administrative grievances.  In sum, Plaintiff has not established
a causal relationship between his protected conduct and the alleged
adverse action by Defendant Svir.  See Farrow v. West, 320 F.3d at
1248-49.

Secondly, Plaintiff claims that Defendant Parker retaliated
against him by "issuing her attempts to conspire with other
officers to punish" him for his exercising his right to file
grievances, his right to correspond with attorneys and the courts
and his right to use the legal resources at the penal facility.
Specifically, he alleges that she conducted retaliatory locker

---

[3] Based on Plaintiff's exhibit, the grievance concerning
Sergeant Hooten was resubmitted to Defendant Svir on June 13, 2001.
See Plaintiff's Complaint (Doc. #1), Exhibit B1.

searches and illegally confiscated personal items before he reported to confinement. He concludes that she was responsible for his placement in administrative confinement from June 28, 2001, until August 31, 2001. In response to Plaintiff's allegations, Defendant Parker states that it was part of her job to search inmates' lockers and such searches were "routine and a log of all searches [were] kept." Defendant Parker's Affidavit. Further, a property receipt was given to the inmate whenever contraband or unauthorized items were taken from an inmate's locker. Id. Defendant Parker finally noted that she did not have the authority to place an inmate in confinement. Id.

The record clearly reflects that Defendant Parker was responsible for conducting inmate locker searches at the Reception and Medical Center. And, certainly, this is an event that is appropriate as part of the internal prison administration to secure and maintain order within the prison. Defendant Parker states that she did not know that Plaintiff had filed grievances against her. Id. Plaintiff even concedes that he had materials beyond the permissible amount when he noted that Officer "Woodville ended up taking most of the excess stuff and allow[ed] the Plaintiff to keep a certain amount . . . ." Second Amended Complaint at 10. Finally, the record reflects that Plaintiff was placed in administrative confinement by Inspector B. Clark, the Chair of the Classification Committee, and Defendant Parker had no authority to

- 14 -

place Plaintiff in administrative confinement. See Defendants'
Motion for Summary Judgment (Doc. #74), Exhibit C; Defendant
Parker's Affidavit.  At the time of his placement into
administrative confinement, Plaintiff was given an opportunity to
respond, but did not offer a statement. Id. Based on the record
before this Court, Plaintiff has not established a causal
relationship between his protected conduct (i.e., his exercising
his right to file grievances, his right to correspond with
attorneys and the courts and his right to use the legal resources
at the penal facility) and the alleged adverse actions by Defendant
Parker. See Farrow v. West, 320 F.3d at 1249 (citing Avirgan v.
Hull, 932 F.2d at 1577 ("If the party seeking summary judgment
meets the initial burden of demonstrating the absence of a genuine
issue of material fact, the burden then shifts to the nonmoving
party to come forward with sufficient evidence to rebut this
showing with affidavits or other relevant and admissible
evidence.")).

Further, Plaintiff's Affidavit (see Plaintiff's Reply (Doc.
#83), Exhibit P), to the extent it relies on hearsay, is not
sufficient to oppose Defendants' motions for summary judgment. See
Bozeman v. Orum, 422 F.3d 1265, 1267-68 n.1, n.2 (11th Cir. 2005)
(per curiam) (stating that, "in discerning the facts for summary
judgment" purposes, the court cannot consider hearsay); Federal
Rule of Civil Procedure 56(e) (stating that "[s]upporting and

- 15 -

opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"); Cunningham v. O'Leary, 40 Fed. Appx. 232, 235 (7th Cir. 2002) (citations omitted) (unpublished order) ("Affidavits, even from pro se litigants, must be based on personal knowledge and relate admissible facts."), cert. denied, 537 U.S. 1119 (2003).

Thirdly, Plaintiff claims that Defendant Barnett retaliated against him by giving illegal advice to Plaintiff in retaliation for Plaintiff's exercising his right to correspond with attorneys and the courts. Specifically, Plaintiff alleges that Defendant Barnett made unprofessional comments to Plaintiff on June 28, 2001, stating "Who do you think you are . . . The Inmate Spokesman . . . You're going to be a Prisoner's Advocate or something once you are released" and then responding, "Well you should be concerned at how staff perceives you if you want to get all of your gain time. As a result of your legal endeavors, you stick out like a sore thumb and that's created a problem for staff." Plaintiff concludes that Defendant's acknowledging that Plaintiff's abundance of legal endeavors was "unofficially unacceptable to him and to other staff members tells the Plaintiff that they felt threatened by the Plaintiff's activities and were inclined to retaliate." Plaintiff's Second Amended Complaint at 12.

In response to Plaintiff's allegations, Defendant Barnett states, in pertinent part:

> I was employed by the Florida Department of
> Corrections for 25 years, retiring as a
> Sergeant in December, 2003. Throughout my
> entire career, I worked as a Correctional
> Officer at [the] Reception and Medical Center
> ("RMC") formerly known as North Florida
> Reception Center ("NFRC").
>
> In 2001, my general duties were to
> oversee outside work squads and to control
> inmate movement between the west unit and main
> unit by operating the sallie port gate, which
> separated those units.
>
> I recall the inmate, Eddie Pittman. It
> is likely that I was working at the sallie
> port gate on June 28, 2001. If that was the
> date that Mr. Pittman was placed in
> confinement, he likely passed through the gate
> on his way from the west unit to the
> confinement area in the main unit. I
> specifically deny making statements to Mr.
> Pittman as reflected in pages 11 and 12 of his
> Second Amended Complaint. I never made any
> comments to Mr. Pittman about him [sic] being
> an inmate spokesman or prisoners' advocate. I
> never told him that he stuck out like a sore
> thumb or created a problem for staff.
>
> Prior to June 28, 2001, I had no
> knowledge that Mr. Pittman submitted
> grievances against correctional officers at
> NFRC. Only when he filed a grievance against
> me at a later date did I learn that he had
> been filing grievances against other officers
> as well.
>
> Any dealings I may have had with
> Plaintiff, Eddie Pittman, arose out of the
> course of my employment with the Florida
> Department of Corrections.

> I did not intentionally violate any of
> Plaintiff's Civil Rights, First Amendment or
> otherwise.

Defendant Barnett's Affidavit.

The record does clearly reflect that Defendant Barnett was working the sallie port gate on June 28, 2001; however, Defendant Barnett denies that he made the above-cited statements. But, even assuming Plaintiff's version of the facts to be true, Plaintiff has not demonstrated that Defendant's actions were the result of Plaintiff's filing of grievances and corresponding with attorneys and courts. Plaintiff, in his Second Amended Complaint, concludes that the prison officials (including Defendant Barnett) "were inclined to retaliate." Plaintiff's Second Amended Complaint at 12. An inclination to retaliate based on mere conjecture is not enough to demonstrate an actual retaliatory motive. See Cordoba v. Dillard's, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted) ("Speculation does not create a *genuine* issue of fact, instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") There must be a causal relationship between the protected conduct and the alleged adverse action, which Plaintiff has not shown. See Farrow v. West, 320 F.3d at 1248-49.

As Plaintiff Pittman's fourth claim of retaliation, he contends that Defendant Eberle retaliated against him by threatening him for exercising his right to legal correspondence. Specifically, Plaintiff states that Defendant Eberle, on July 20,

2001, while delivering Plaintiff's legal mail, angrily stated, "I'm going to see if I can get someone to come in there and take care of you . . . then I won't have to worry about you anymore." Second Amended Complaint at 12.

In response to Plaintiff's allegations, Defendant Eberle states, in pertinent part:

> I have been employed by the Florida Department of Corrections for 25 years. For the past 23 years, I have worked as a correctional officer at [the] Reception and Medical Center ("RMC") formerly known as North Florida Reception Center ("NFRC").
>
> On July 20, 2001, I worked the fog patrol from 6:30 AM to 8:00 AM. From 8:00 AM to 4:00 PM, I worked as an escort officer for the confinement area, K dorm.
>
> As an escort officer, I would deliver legal mail to inmates in K dorm.
>
> Although it is possible that I delivered legal mail on July 20, 2001, I categorically deny the allegations of Plaintiff, Eddie Pittman, in this case. I have no recollection of Mr. Pittman.
>
> I did not ever have a dispute with an inmate over a pen nor did I ever threaten any inmate over legal mail.
>
> Any dealings I may have had with Plaintiff, Eddie Pittman, arose out of the course of my employment with the Florida Department of Corrections.
>
> I did not intentionally violate any of Plaintiff's Civil Rights, First Amendment or otherwise.

Defendant Eberle's Affidavit.

Thus, while the record clearly reflects that Defendant Eberle worked as an escort officer for the confinement area (K dormitory) and would deliver legal mail to inmates in K dormitory, Defendant Eberle denies that he threatened Plaintiff Pittman.   Plaintiff describes Defendant Eberle's statements as "an insinuated death threat" that was based on Eberle's providing a pen for Plaintiff to use to receive the legal correspondence.   Second Amended Complaint at 12.   Plaintiff was not denied his legal correspondence.   Even assuming Plaintiff's version of the facts to be true, Plaintiff has not established a causal relationship between his protected conduct (his right to receive legal correspondence) and any adverse action by Defendant Eberle.   See Farrow v. West, 320 F.3d at 1248-49.

As Plaintiff's fifth claim of retaliation, he contends that Defendant Clemons retaliated against him on two occasions:   on August 14, 2001, by intercepting a letter Plaintiff had sent to the Institutional Inspector and by threatening Plaintiff; and, on September 27, 2001, when Defendant Clemons told Plaintiff that he had him brought back to confinement.

In response to Plaintiff's allegations, Defendant Clemons states, in pertinent part:

> I have been employed by the Florida Department of Corrections for 21 years.   For the past year, I have been a captain.   For the ten years previous, I served as the administrative lieutenant at [the] Reception and Medical Center ("RMC"), formerly known as North Florida Reception Center ("NFRC").   As administrative lieutenant, I worked from 8:00

- 20 -